Garry, J.
(dissenting). We respectfully dissent, as we find that the circumstances of petitioner’s injury were of an extraordinary, urgent, and wholly unanticipated nature, and the resulting risks to him were beyond the scope of his anticipated duties, even given the potentially dangerous nature of his work as a police officer. Petitioner’s injuries resulted from circumstances that were “unusual, unexpected and not a risk inherent in the ordinary performance of [his] regular duties” (Matter of Leuenberger v McCall, 235 AD2d 906, 907 [1997]; see Matter of Pratt v Regan, 68 NY2d 746, 747-748 [1986]). He was providing urgent emergency services in the midst of a hurricane. Upon arriving at the scene, he found a partially destroyed, unstable structure with two walls and half of the roof missing; it was raining, there were high winds, and debris and trees were continuing to fall. One resident was already dead and others were trapped inside. Due to the ongoing storm conditions and surrounding devastation, petitioner soon learned that there would be no further aid or assistance available—no one else was able to reach the scene. The record reveals without contradiction that absent these highly exceptional circumstances, and in the ordinary course of petitioner’s duties, he would neither have entered the unstable structure nor attempted the rescue that caused his injuries.
Petitioner’s general job duties necessarily included assisting injured persons. However, it was not his personal duty to directly provide aid in every circumstance. The uncontroverted testimony demonstrated that petitioner’s job duties did not encompass entering unstable structures under unsafe circumstances to carry out rescues; to the contrary, he was specifically instructed not to do so. Indeed, petitioner lacked any training to carry out such rescues, a compelling factor in this analysis. The established department protocol called for petitioner to assess the safety of a scene upon arrival. If his assessment *1473 revealed that a structure was unstable, he was not to enter it. It was instead his duty to call for personnel with the necessary training. While awaiting their arrival, petitioner’s further duty was to maintain the perimeter, prevent people from entering, call for supervisors or ambulances if necessary and, in short, provide the safest possible conditions to allow people possessing the appropriate skills and training to carry out the rescue.
Here, petitioner was unable to comply with the established protocol due to the unusually severe storm in progress. Upon calling for assistance, petitioner learned that the fire department would be substantially delayed, the technical rescue team was two hours away, and other police officers were unable to report. There were but two rescuers available—petitioner and his partner. Therefore, despite their lack of training and the instability of the structure, they entered the house and attempted the rescue. Petitioner felt an injury in his shoulder as he threw debris off the trapped and injured residents, but continued to work. Shortly thereafter, an overhead rafter began to fall toward petitioner’s partner and the residents. Grabbing it, petitioner immediately felt additional pain in his shoulder and neck. This injury thus resulted directly from the instability of the structure; but for the intense urgency, it may have been possible to shore up the structure and decrease the risk of injury to the rescuers. These unusual facts reveal the wholly unexpected nature of the event, in which “time was of the essence” and petitioner was confronted with the immediate need to gain access to an unstable structure despite his lack of appropriate training, and place the occurrence well outside the ordinary expectations and anticipated demands of petitioner’s job duties (Matter of Cantone v McCall, 289 AD2d 863, 864 [2001]). In clear contrast to the recent authority relied upon by the majority, there is simply nothing in the underlying circumstances that may be considered either routine or ordinary, even for a police officer (compare Matter of Schoales v DiNapoli, 132AD3d 1184, 1885-1186 [2015]; Matter of Lanzetta v DiNapoli, 130 AD3d 1109, 1110 [2015]; Matter of Dicioccio v DiNapoli, 124 AD3d 1170, 1171 [2015]).
For the same reasons, we further find that respondent’s determination to the effect that petitioner’s injury resulted from “voluntarily attempting a task routinely performed by other officers” (Matter of Caramante v Regan, 129 AD2d 850, 852 [1987], lv denied 69 NY2d 611 [1987]; see Matter of Woods v McCall, 240 AD2d 839, 839 [1997], lv denied 90 NY2d 808 [1997]) was unsupported by substantial evidence. Accordingly, we would grant the petition and annul the determination.
*1474 Lynch, J., concurs.
Adjudged that the determination is confirmed, without costs, and petition dismissed.